Williams, EJ.
Both parties in this attorney’s-fee dispute are experienced lawyers. The defendant, Brian F. Mahoney (“Mahoney'’), has appealed the allowance of the motion of the plaintiff, John P. Donovan (“Donovan”), for summary judgment on Donovan’s claim that Mahoney had breached a referral-fee agreement between the two.
Donovan, who was retiring from the practice of law, and Mahoney agreed in writing that Donovan would refer personal-injury clients to Mahoney. Mahoney would compensate Donovan in the amount of one-third of any contingency fee collected, plus any costs Donovan had incurred.
Donovan referred to Mahoney the workers’ compensation claim of one Daniel Donovan (“Daniel”).[1] Mahoney later referred Daniel’s claim to an Attorney Brian Cloherty (“Cloherty”), who reportedly enjoyed a rapport with the insurance adjuster handling that claim. Cloherty obtained a lump-sum settlement of the claim for $200,000.00, see G.L.c. 152, §48, and sent a $13,000.00 referral fee to Mahoney. Mahoney forwarded $5,214.00, slightly more than one-third of the referral fee, to Donovan.
Discontented with that fee, Donovan brought this suit against Mahoney to recover $7,780.00, alleging that Mahoney had breached their referral agreement by “reassigning” Daniel’s claim to another lawyer without Donovan’s consent. Donovan further asserted that it was his intent in contracting with Mahoney that Mahoney himself would resolve all the cases referred to him and would not “assign” these cases to another lawyer.
Donovan moved for summary judgment not on the ground that his contractual “intentions” were unmet, but that once Mahoney referred the claim to Cloherty, Mahoney no longer represented Daniel, was in breach of the plain terms of the referral agreement, and was not entitled to any fee at all. The motion judge allowed Donovan’s Mass. R. Civ. E, Rule 56, motion and awarded the full $7,780.00 amount of the damages sought in the complaint.
*42 It is axiomatic that summary judgment is appropriate only when there is no genuine issue of material fact and, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P., Rule 56 (c). See also Wilkinson v. Citation Ins. Co., 447 Mass. 663, 667 (2006); Brooks v. Peabody & Arnold, LLP, 71 Mass. App. Ct. 46, 50 (2008). “On review of summary judgment, we ... consider the record and the legal principles involved without deference to the motion judge’s reasoning.” Brooks, supra at 50, quoting Clean Harbors, Inc. v. John Hancock Life Ins. Co., 64 Mass. App. Ct. 347, 357 n.9 (2005).
The 2003 referral-fee agreement signed by both parties[2] neither forbade Mahoney from further referring the cases he received from Donovan, nor obligated him to consult with Donovan or to notify him before doing so. It did require Mahoney to obtain a referred client’s written permission before paying Donovan a referral fee.[3] Nothing in the agreement addressed Donovan’s reliance on Mahoney’s expertise, or any “expectations” Donovan had that Mahoney would see matters through to conclusion. The core of the agreement was that Mahoney would pay Donovan one-third of any fee realized by Mahoney from a referred case. Mahoney did just that.
The sole basis for Donovan’s summary judgment motion was the purported difference between a “referral fee” and a “contingent fee.” Overarching that argument was Donovan’s point that the parties’ agreement was unambiguous. When a contract is unambiguous, its interpretation is a question of law appropriate for a judge to decide on summary judgment. Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002). See also Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 36 (2008) (interpretation of unambiguous contract is question of law, as is preliminary question of existence of ambiguity). Cf. Commodore v. Genesis Health Ventures, Inc., 63 Mass. App. Ct. 57, 64 (2005) (reversing summary judgment where contract ambiguous). The problem here is that even if the contract is deemed to be unambiguous, there is no interpretation of that contract that leads ineluctably to a ruling that Donovan was entitled to one-third of Cloherty’s fee, or to any more than he received from Mahoney.
Relying on the unambiguous terms of the agreement, Donovan argued that Mahoney had promised to pay Donovan a referral fee from Mahoney’s contingent fee. According to Donovan, a “contingent fee, as described in contingent fee agreements” is generated “upon a settlement or judgment while being represented by that attorney.” Because Mahoney himself did not settle Daniel’s claim for a lump-sum amount, Mahoney did not, in Donovan’s view, generate a “contingent fee” — Cloherty did. Thus, Donovan argued, Mahoney was not entitled to any fee, and certainly not to one from which Donovan’s one-third fee would derive. It is Donovan’s contention that his fee should instead have been based on the attorney’s fee received by Cloherty, an attorney with whom, as far as this record reveals, Donovan had no agreement or relationship of any kind.
*43 Donovan has offered no authority to support his conclusion, which we find is reached only through sophistry. Further, Donovan’s interpretation clashes with other “contingent fee” language in the agreement itself. The agreement provides that Donovan need not “execute any agreements in the future re referred cases, in order for him to receive a contingent fee from Attorney Mahoney” (emphasis supplied). But if Mahoney cannot receive a “contingent fee” from Cloher ty because he did not represent Daniel, how could Donovan — who was also not representing Daniel and who did not obtain a settlement of his claim — receive a “contingent fee” from Mahoney? The “unambiguous language” of the agreement cannot logically provide that Donovan could realize a “contingent fee” without “settling” Daniel’s case, but that Mahoney could not.
Further, the “unambiguous language” of the agreement raises the question whether it would have any application to a case such as Daniel’s. The agreement addresses referrals of “Personal Injury cases/claims.” Daniel’s claim was for workers’ compensation benefits; it was not a personal injury case.[4] The difference between those two types of claims that is most relevant in this case is that attorney’s fees in workers’ compensation cases are generally not thought of as “contingent fees” because they are statutorily dictated and subject to approval by the Division of Industrial Accidents. G.L.c. 152, §13A.[5] If there was an intent that claims such as Daniel’s were to be covered by the agreement, that intent was a question of fact to be determined at trial. See Seaco, supra at 779.
In short, even if we assume that the terms of the parties’ agreement were unambiguous and thus subject to interpretation as a matter of law, Donovan failed to satisfy the second prong of the summary judgment standard by demonstrating that he was entitled to judgment as a matter of law. He proffered no authority supporting his contention that the language of the subject agreement mandated a finding in his favor. Indeed, a finding for Mahoney seems just as likely given the fact that the essence of the agreement appears to be that Donovan would receive one-third of whatever fee Mahoney received.
The allowance of Donovan’s summary judgment motion is reversed, and this case is returned to the Stoughton District Court for further proceedings consistent with this opinion.
So ordered.

 We refer to this claimant by his first name simply to distinguish him from the plaintiff who is, apparently, the claimant’s uncle.

 Although the record contains an unsigned, different version of a referral-fee agreement, there is no dispute that the signed version was the operative contract.

 “A division of a fee between lawyers who are not in the same firm may be made only if, after informing the client that a division of fees will be made, the client consents to the joint participation and the total fee is reasonable.” Mass. R. Prof. C., Rule 1.5(e).

 The differences between personal injury tort actions and workers’ compensation claims are discussed at length in L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers’ Compensation §1.8, at 8-11 (3d ed. 2003).

 For lump-sum settlements, attorney’s fees are capped at fifteen (15%) percent if the settlement is reached before the compensation insurer accepts liability, or before liability is found by the Division of Industrial Accidents, the reviewing board or the Appeals Court. G.L.c. 152, §13A(8)(a). If settlement is reached after any of those points, the attorney’s fee is capped at twenty (20%) percent. G.L.C. 152, §13A(8) (b).